act, as we have seen, allows the levy of executions issued under its provisions to be met by affidavits of illegality, and they are made returnable to that court. If a levy of such an execution had been made on property of the plaintiff in error, and it had availed itself of the remedy thus offered, it would not be heard to say this remedy was not a proper one. So when it voluntarily files in that court a petition seeking to restrain the comptroller-general from enforcing this law against it, a still stronger reason appears for not permitting it to deny the court's jurisdiction.

As already remarked, we have examined this act most carefully and deliberately. It provides, we think, a reasonable, uniform and fair system for the taxation of railroads by counties. There is no reason why these corporations, like all other persons, should not bear their share of the burdens of taxation for the benefit of the counties through which they run, and from which they derive revenue. Although the act may not in all its parts be absolutely perfect and complete, the purpose of the legislature is sufficiently manifest to be understood, and we have endeavored to show how it may be carried into effect. We would not be authorized, even if we felt so disposed, to set this law aside because of defects which are not vital; and we certainly ought not to do so when we are not only satisfied it is capable of a proper enforcement, but also fully and cordially approve its wise and just provisions. It is not unconstitutional for any reason assigned in the petition, or for any other of which we are aware.            *Judgment affirmed.*

---

GEORGIA MIDLAND & GULF R. R. Co. *v.* THE STATE.

1. This case is controlled by *The Columbus Southern Railway Co.* v. *Wright, comptroller-general.*
2. The law under which the execution for taxes issued in this case being constitutional, and so far as appears being applied correctly

as against the corporation now complaining, in view of the construction put upon the law by this court, the affidavit of illegality touching the assessment of taxes against the Southwestern R. R. Co. would, if true, show nothing more than that the law has been misconstrued or misapplied as touching that company, and if so, this would be no cause for arresting the present execution by affidavit of illegality. A tax-payer cannot protect himself against a legal and proper demand for his own taxes, by alleging that another tax-payer has been assessed for taxation in a way to render his taxes less than they ought to be under a proper administration of the law.

3. A tax-payer who avails himself of an affidavit of illegality authorized by the statute to resist an execution for taxes, must abide by the statute as to such remedy, or abandon the remedy altogether. It follows that where the statute makes the affidavit of illegality returnable to a particular court, it cannot be returned or transferred to any other court.                *Judgment affirmed.*

April 19, 1892.  By two Justices.

Illegality.  Taxation.  Constitutional law.  Statute. Before Judge MARSHALL J. CLARKE.  Fulton superior court.  September term, 1891.

To an execution issued by the comptroller-general against the railroad company, for county tax alleged to be due by it to Muscogee county under the act of 1889, the defendant filed an affidavit of illegality. A demurrer to this affidavit, and a motion of defendant to transfer the case to the superior court of Muscogee county, were argued together. The demurrer was sustained and the motion to transfer was overruled, and the company excepted.

The grounds of illegality were : (1) There is no authority of law for the assessment or levy of the tax, or for the issue of execution therefor, the act of 1889 under which the assessment and levy were made and execution issued being unconstitutional, null and void, because in violation of paragraph one, section two, article seven; paragraph one, section four, article one; paragraph two, section six, article seven; paragraph one, section one, article seven, of the constitution. Pursuant to the requirement of section one of the act of

1889, but not conceding the validity of the same, de-
fendant made return to the comptroller-general for 1890,
which return was correct and accepted as correct by the
comptroller-general, who thereupon assessed against it
county tax under said act for each of the counties
through which it ran, based upon the rate of taxation
for such counties and the valuation of the property in
such counties and *pro rata* of personalty.   The return
made by defendant and the statement of the assessment
of the comptroller-general are set out in full in the affi-
davit.   At the same time the comptroller-general, under
the act, assessed against the Southwestern Railroad
Company county taxes for the counties through which
it runs, based upon the income estimated on mileage.
The tax levied upon defendant and for which the *fi. fa.*
is issued is not uniform, in that on fourteen miles of
track and other property of defendant located in Mus-
cogee county, and the *pro rata* amount of personalty,
on an assessed valuation of $124,120, a tax of two and
a half mills is levied, making $310.30, whereas the
Southwestern Railroad Company with twenty-two and
a quarter miles of track and other property located in
said county, which, with a similar apportionment of
personalty, is of the value of over $225,000, would be
subject at the same rate to a tax of $562.50, is not taxed
upon any valuation whatever of its said property, but
is only taxed in said county one half of one per cent.
on $39,750, its net annual income apportioned accord-
ing to its mileage in said county. The total net annual
income of the one hundred miles of defendant's road is
$68,928.04, which, being apportioned, as aforesaid,
according to mileage, would make it taxable in Mus-
cogee county on $9,649.22, of which one half of one
per cent. would be $48.25.   The aggregate mileage of
the Southwestern railroad is $203.39, and its aggregate
value about $1,700,000, each more than double that of

defendant, and it is taxed under the act only on $354,-447, its net income. In like manner the Georgia Railroad Company for 227 miles, the Central for 208 miles, the Western & Atlantic for 121 miles, and the Augusta & Savannah for 53 miles, each of value approximately in proportion to mileage, are not under the act taxed on their respective values, but only on their incomes, whereby a greatly less amount in proportion to the value is required of them than of defendant. (2) The taxation is not uniform within the territorial limits of the State (the authority levying the tax), the percentage varying in the several counties through which the defendant's railroad runs, as appears from the comptroller-general's assessment. Said act is an exercise by the General Assembly of its powers of taxation over the whole State, and is not for any one of the purposes limited in the constitution. It is a tax levied, assessed and sought to be collected directly by the State, and not a power to tax delegated to the county as provided in the constitution, and would not be protected by the constitutional restrictions of such delegated power, and said tax would be for no purpose authorized by the constitution. Under the constitution, taxation for county purposes must be delegated to the counties and cannot be exercised by the State directly, as is sought to be done by said act. The general laws of the State (Code, §§502–541, 3943) and the general law in regard to returns of taxes to the receivers of tax returns, and the collection thereof by the tax-collectors of the several counties, make ample provisions for the assessment, levy and collection of all taxes by counties and for county purposes; and under the constitution no special law can be enacted affecting railroad corporations; and this corporation has never consented to but has always protested, and does now protest against the varying of said general law, in so far as it

affects its particular case.   So far as said act seeks to tax the personal property and rolling-stock of defendant and other railroad ·· companies, as provided in section · three, it is null and void, because the method of apportioning such taxation prescribed therein is unintelligible and not susceptible to construction.   In so far as said act may be construed to seek a distribution of the taxation of said personalty and rolling-stock along the . entire line of the road, it is unconstitutional and void, because the *situs* of such property is the domicile or chief office of defendant, Muscogee county,  and there alone, if at all, it is subject to be taxed.           ·      ·

GOETCHIUS & CHAPPELL, for plaintiff in error.
CLIFFORD ANDERSON and W. C. GLENN, *contra*.

---

THE METROPOLITAN STREET RAILROAD CO. *v.* POWELL.

89   601
95   687
89   601
102   35
102   346
102   510

89   601
f128   385

1. The city court of Atlanta, being invested by statute with power over both civil and criminal business at its March and September terms, was not deprived of its jurisdiction over civil business at those terms by a subsequent statute withdrawing from it all criminal jurisdiction.  Such withdrawal did not operate by implication to abolish the March and September terms of the court. *Richmond & D. R. R.* v. *Allison*, this term.  89 *Ga.* 567.
2. A declaration for a tort will not be dismissed on motion at the trial term because of uncertainty in setting forth the date of the commission of the tort, or because some of the personal injuries complained of are not fully described.  Such defects are matter for special demurrer.  The court committed no material error in admitting evidence or in charging the jury.
3. The alleged misconduct of plaintiff's counsel, by disclosing in the hearing of the jury the contents of a paper that he sought to introduce in evidence, is not cause for ordering a new trial over the discretion of the presiding judge.
4. When the plaintiff or his counsel violates the conditions of a fair trial by stating facts to the jury not in evidence, or by other unfair and unwarrantable practice in the conduct of his cause, the court may declare a mistrial of its own motion or upon motion of the defendant, or the defendant may object to the impropriety and invoke such ruling thereon and such instructions to the jury as may prevent as far as possible any mischief to the cause of