## MAYOR & COUNCIL OF BRUNSWICK *v.* DEAVER.

1. The act approved August 13, 1910 (Acts 1910, p. 26), was designed. to supply the machinery to ascertain if two thirds of the voters of a municipality approve the levy and collection of a tax for the support of public schools in those instances where the General Assembly had conferred on the municipality authority to establish and maintain a system of public schools by local taxation in whole or in part, subject to the approval of the voters, but had omitted to provide machinery for the submission of the proposal to tax to the voters of the municipality.

2. The system of public schools in the City of Brunswick is supervised by the board of education of Glynn county, which also has control of the county schools, but inasmuch as the acts of the General Assembly (Acts 1873, p. 256; Acts 1900, p. 172) specifically provide that the city schools shall be operated separately from the county schools, and that all municipal revenues are exclusively applied for the support of the city schools, such city schools are none the less the public schools of the city.

3. Section 10 of the act amendatory of the charter of the City of Brunswick, approved August 6, 1904 (Acts of 1904, p. 385), confers upon that municipality the power to maintain a system of public schools in

part by local taxation. The machinery provided for in the act of 1910 supplements the act of 1904 with reference to the submission to the qualified voters of the city for their approval of the proposal to levy and collect a tax not to exceed one tenth of one per cent. for.the support of the public schools of that city.

MAY 9, 1911.

Injunction. Before Judge Conyers. Glynn superior court. February 11, 1911.

*J. T. Colson,* for plaintiff in error. *R. D. Meader,* contra.

EVANS, P. J. A. S. Deaver, a citizen and taxpayer of the City of Brunswick, filed his petition to enjoin the Mayor and Council of the City of Brunswick from'levying and collecting a special tax of one tenth of one per cent. for the support and maintenance of the public·schools of the city. It appears that upon the petition of more than one fourth of the qualified voters of the City of Brunswick the mayor and council of the municipality ordered an election to be held pursuant to the act approved August 13, 1910 (Acts 1910, p. 26), for the purpose of submitting the question of levying a local tax for the support of the public schools of the city of Brunswick. More than two thirds of the voters in such election voted in favor of the· levy of the special tax. The Mayor and Council of the City of Brunswick were proceeding to levy and collect the special tax claimed to have been authorized by the election, when the plaintiff filed his petition to enjoin the same.

The sole question to be determined from this record is .the applicability of the act approved August 13, 1910, to the municipality of Brunswick. That act provides that "Any municipality authorized by law to establish and maintain a system of public schools by local taxation in whole or in part, and which is not now specifically authorized to hold an election on the question of local taxation for school purposes, shall have the right to submit the question of local taxation for public schools to the qualified voters of the municipality." This act was passed shortly after the decision of this court in the case of *Brooks* v. *Town of Loganville,* 134 *Ga.* 358. In that case it was held that the constitutional provision that authority may be granted by the legislature to municipal corporations to establish and maintain public schools by local taxation, but that no such law shall take effect unless it has been submitted to a vote of the qualified voters of the municipal corporation and approved by a two-thirds majority of the persons voting at such

election, was not self-executive; that unless machinery was devised by the legislature for submitting the proposal to a plebiscite vote, no election could be held, although the legislature had conferred upon the municipality the power to maintain a system of public schools by local taxation. The clear meaning of the act is that where the legislature has conferred upon a municipality power to maintain public schools by local taxation, and has omitted to provide machinery for submitting the question to the qualified voters of the municipality so as to ascertain whether two thirds of them favor the proposed tax, the act was designed to supply this omission. It did not confer upon municipalities the power to establish and maintain a system of public schools by local taxation, but only provided a method of holding an election.

The City of Brunswick has a system of public schools administered and supervised by the board of education of Glynn county. This board is a corporate entity, and to it is given the direct supervision and management of the public schools of the City of Brunswick and the county of Glynn. The board is composed of ten members, five of whom are residents of the City of Brunswick and selected by the mayor and council, and the remaining five members are selected by the grand jury. The funds of the board are kept separate, and the money received from the city, such as revenue from the town commons and special appropriations, is devoted to the exclusive use of the city schools. The money received from the county is devoted to the county schools. The public-school fund is prorated on the basis of school population. The board of education makes annual reports of the expenditure of the money received from the city to the mayor and council, and of the money expended in the county outside of the city to the grand jury. Teachers in the city schools are nominated by the city members, subject to the approval of the entire board. The office of superintendent of city schools is created, and this officer is selected by the city members; the county school commissioner is given supervision of the schools of the county outside of the city.

For many years, as reflected from the various acts amendatory of its charter, the municipality of Brunswick has maintained a system of city schools under the same management that had control of the county schools. The educational plan comprehended unity in the management of both city and county schools, but complete sep-

aration of city from county schools in the expenditure of revenues appropriated by the city to the city schools. It is not the manner of administering the school system of a city which alone makes a system of city public schools. Frequently the legislature has incorporated city boards of education and invested them with exclusive dominion over the city public schools, devolving on the municipality only the duty of supplying the necessary funds for their maintenance. It is a mere matter of policy, whether the school is conducted by a city board of education or according to the Glynn county plan. Until 1904 the General Assembly had provided that the city schools of Brunswick were to be supported from the rents of the public commons and other municipal resources, but in that year the charter of the city was amended, so as to provide a supplementary revenue from local taxation. The 10th section of the act of 1904 is as follows: "That for each and every year, commencing with the year 1905, there shall be appropriated by this act for expenditure for public schools in said city, under the direction of the board of education of Glynn county, one tenth of one per cent. on the taxable values assessed and collected for such year, separate from and exclusive of taxes and revenues collected from town commons. This section to take effect only after a vote of the lawful voters of Brunswick, at an election at which such question shall be voted upon under the constitution and laws of Georgia." This provision not only recognizes that the City of Brunswick maintained a system of public schools under the direction of the board of education of Glynn county, but directly confers upon the municipality of Brunswick the power to supplement the revenues for the support of the schools by the levy and collection of a tax not to exceed one tenth of one per cent. This section provides that the tax is not to be assessed and collected until it has been voted upon by the qualified voters of the city agreeably to the constitution and laws of the State. By this act the General Assembly did confer upon the municipality of Brunswick the power to support its public schools in part by local taxation, but made no provision for any machinery for the submission of the question of maintaining the public schools by the levy of the tax provided for in the act. It is to supply such a deficiency as this that the act of 1910 was passed; and we think that the court erred in holding that the act was inapplicable to the City of Brunswick. There being no complaint as

to the regularity of the election or the levy and assessment of the taxes, it follows that the judgment granting an injunction must be

　　　　　　　　　　*Reversed. All the Justices concur.*